**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------------
UNITRIN AUTO AND HOME                :
INSURANCE COMPANY A/S/O              :
KENNETH A. SCOTT,                    :
                                     :
                                     :
                    Plaintiff,       :          Civ. No. 06-6035 (DRD)
                                     :
         v.                          :
                                     :
CARY R. GITTER AND SIDNEY            :              O P I N I O N
GITTER,                              :
                                     :
                    Defendants.      :
                                     :
-------------------------------------------------------
```

MARGOLIS EDELSTEIN
Thomas L. Grimm, Esq.
216 Haddon Avenue, 2nd Floor
P.O. Box 92222
Westmont, New Jersey 08108

*Attorneys for Plaintiff Unitrin Auto and Home Insurance Company a/s/o Kenneth A. Scott*

CALLAN, KOSTER, BRADY & BRENNAN
William L. Brennan, Esq.
740 Broad Street
Shrewsbury, New Jersey 07701

*Attorneys for Defendants Cary Gitter and Sidney Gitter*

**<u>DEBEVOISE, Senior District Judge</u>**

      Plaintiff, Unitrin Auto and Home Insurance Company A/S/O Kenneth A. Scott

("Plaintiff"), a New York corporation, commenced this action by filing a complaint on December

15, 2006 in the United States District Court for the District of New Jersey (the "Complaint").

Plaintiff alleges that Defendants, Cary Gitter and Sidney Gitter (the "Defendants"), both residents of New Jersey, owe Plaintiff reimbursement for benefits it has paid under a New York no-fault insurance policy to Kenneth Scott ("Scott"), who is not a party to this action.

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the amount-in-controversy is less than the $75,000.00 jurisdictional limitation of this court.[1] For the reasons stated below, Defendants' motion will be granted and the Complaint will be dismissed.

## I. BACKGROUND

On December 20, 2004, Scott was involved in an automobile accident while driving on Route 4 in Englewood New Jersey.  Plaintiff alleges that defendant Cary Gitter was driving a car "owned by defendant, Sidney Gitter, as his agent, servant, or employee" when he crashed into Scott's car.  (Compl. ¶ 8).  Scott suffered serious injuries.  Id.. at ¶ 9.

According to the Complaint, Scott filed benefits claims with Plaintiff under "a policy of insurance to Kenneth Scott and/or Francis [sic] Scott, which policy of insurance provided for New York - no fault benefits."  Id. at ¶¶ 6 and 11.  Thereafter, on October 2, 2006, Kenneth Scott and Sidney Scott (together, the "Scotts") filed a complaint in this court (the "Scott Action") and, according to Plaintiff's Brief in Opposition to Defendant's Motion in Lieu of Answer, the Scotts seek damages of $250,000.[2]

To date, Plaintiff has paid $49,500 in lost wage and medical benefits to Scott, and

---

[1]Plaintiffs do not contest that there is complete diversity.

[2]The complaint in the Scott Action, which is attached to the Affidavit of William L. Brennan, does not specify an amount of damages and alleges only that the amount is in excess of the $75,000 jurisdictional minimum.

anticipates making "additional payments of medical benefits in the foreseeable future." Id. at ¶ 14. According to the Complaint, the amount-in-controversy exceeds $75,000, though Plaintiff does not allege a specific amount. Id. at ¶ 4.

Defendants offer evidence, in the form of copies of responses to interrogatories made as part of the Defendants' discovery in the Scott Action, that Scott has returned to work, (Brennan Aff., Ex. 5 ¶¶ 7 and 8), and in the form of a transcript of a deposition of Scott, that he will not incur significant future medical expenses (Brennan Aff., Ex. 6 at 48-50). Plaintiff has not submitted any evidence.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

Federal courts have diversity jurisdiction where there is complete diversity among the parties, and the amount-in-controversy meets the jurisdictional minimum. See 28 U.S.C. § 1332(a). Spectacor Management Group v. Brown,131 F.3d 120, 122 (3d Cir. 1997). As a general rule, that amount is determined from the good faith allegations appearing on the face of the complaint. Id., citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). The amount plead does not satisfy the required amount-in-controversy if it is appears to a legal certainty that the plaintiff cannot recover at least $75,000. Id.

As the party invoking federal jurisdiction, Plaintiff bears the burden of demonstrating that jurisdiction exists. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). The Court of Appeals explained that "[i]n diversity cases, we generally accept a party's good faith allegation of the amount-in-controversy, but where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal

3

courts must produce sufficient evidence to justify its claims."  Id.

**B.**     <u>Legal Certainty of Plaintiff's Damages</u>

In the instant case, Plaintiff alleges that it is entitled to damages equaling "the total

amount of New York no-fault benefits paid by plaintiff on behalf of or to Kenneth Scott, plus

counsel fees and cost of suit," (Compl. ¶ 3), and that the amount-in-controversy "exceeds the

sum or value of $75,000."  (Compl. ¶ 4).  However, the pleadings are deficient because it is

apparent that the claims are legally certain to fall short of the $75,000 jurisdictional minimum.

A federal court sitting in a diversity case must apply the conflicts of law principles of the

forum state.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477

(1941).  In an action against a tortfeasor wherein the underlying tort occurred in New Jersey,

New Jersey courts generally follow the principal of *lex loci delicti,* and apply New Jersey law.

<u>D'Orio v. West Jersey Health Sys</u>., 797 F.Supp. 371, 374 (D.N.J. 1992) <u>citing</u> <u>Marshall v. Geo.</u>

<u>M. Brewster & Son, Inc.</u>, 37 N.J. 176, 180 (1962).  The merits of the instant case must be

decided according to New Jersey law.  <u>See</u> <u>Id.</u>

The Complaint is unclear as to the legal basis of the Plaintiff's cause of action, and New

Jersey law no longer recognizes common law subrogation claims in the context of New Jersey's

no-fault law.  <u>State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch.</u>, 146 N.J. 1, 7

(1996).  Plaintiff's claim for reimbursement may be viable under Section 9.1 of New Jersey

Statute 39:6A (the "No-Fault Law"), which provides, in pertinent part:

> An insurer . . . paying [personal injury protection ("PIP")]
> benefit[s] . . .  shall, within two years of the filing of the claim,
> have the right to recover the amount of payments from any
> tortfeasor who was not, at the time of the accident, required to

4

> maintain [PIP] coverage . . . or although required did not maintain
> [PIP] coverage at the time of the accident.

Although possible future benefits claims by the Scotts may exceed the $75,000 minimum,

Section 9 of the No-Fault Law does not contain a provision for advance reimbursement.  Id.

Thus, even if Plaintiff's action is valid under Section 9 of the No-Fault Law, the pleadings and

evidence indicate that Plaintiff is only entitled to $49,502 under New Jersey law.  Thus, the

amount-in-controversy is legally certain not to exceed $75,000.

     In any event, regardless of whether New Jersey law entitles plaintiff to pursue

reimbursement for expected future insurance claims not yet filed by Scott, federal courts

generally do not consider possible future outlays when calculating the amount-in-controversy for

claims seeking money damages.  Russ v. Unum Life Ins. Co., 442 F.Supp.2d 193, 197 (D.N.J.

2006), citing Gray v. Occidental Life Ins. Co. of Cal., 387 F.2d 935, 936 (3d Cir. 1968), but cf.

Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 542-3 (7th Cir. 2006).

## C.    Plaintiff's Aggregation Argument

     Plaintiff's aggregation theory is also unavailing.  Plaintiff contends that its claims are

derivative of the claims asserted in the separate Scott Action, and, relying on Bishop v. Gen.

Motors Corp., that its claims should be aggregated with Scott's claims for purposes of

determining the amount-in-controversy.  925 F.Supp. 294 (1996).  In Bishop, the court remanded

plaintiff's claims to state court after finding that the damages claims of the multiple plaintiffs

could not be aggregated because they were not "inextricably intertwined" and were brought

together in the form of a class action only for the convenience of the parties.  Id. at 297.  The

court applied the rule set forth by the Supreme Court in Snyder v. Harris, that the claims of

separate plaintiffs will not be aggregated for determining the amount-in-controversy except when

"two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest...."  394 U.S. 332, 335 (1969).

The paradigm cases of "common and undivided interest" are those that cannot be adjudicated without implicating the rights of everyone involved, most commonly involving a single, indivisible res--the classic example of which is a piece of property.  Bishop v. Gen. Motors Corp., 925 F.Supp. 294, 298 (D.N.J.1996).  In N.J. Welfare Rights Org. v. Cahill, the Court of Appeals held that a "common and undivided interest" exists when a defendant has no interest in how the claim is to be distributed among plaintiffs, none of the plaintiffs could bring suit without affecting the rights of other plaintiffs, and the rights asserted are common to all the plaintiffs rather than being individually held.  483 F.2d 723, 725 n. 2 (3d Cir.1973).

In the instant case, the Scotts' interests are not "common and undivided" with the Plaintiff's interests because the claims clearly fail the third prong of the Cahill test.  Id.  First, there is no single title or right at stake, and the statutory basis for Plaintiff's claim for reimbursement is substantively different from the common law basis for Scotts' claims for recompense for injuries.

Moreover, the damages for which the Scotts seek relief do not appear to be consistent with the limited scope of the insurance policy under which Scott received benefits from Plaintiff, and Scott may be awarded much more in a judgment following the Scott Action than he could claim in benefits against Plaintiff.  Thus, the potential damages sought here by Plaintiff are narrower than those sought by the Scotts in the Scott Action.  And, as described in detail, supra, the damages for which Scott seeks relief are broader than the reimbursement to which Plaintiff may be entitled under New Jersey law.  Thus, the ad damnum amounts from the claims of

6

Plaintiff and the Scotts cannot be aggregated.

**D.      Plaintiff's Transfer Request**

As a part of the opposition to the motion, Plaintiff requests that, if the court denies the motion, the court "transfer this matter to the Superior Court of New Jersey, in the interest of justice."  Congress has authorized the court, in the interest of justice, to transfer only to another federal court an improperly filed case, and the Court of Appeals has refused to adopt a broader interpretation of that authority.  Moravian School Advisory Bd. of St. Thomas, V.I. v. Rawlins, 70 F.3d 270, 274 (3d Cir. 1995).  Thus, this court, lacking subject matter jurisdiction, has no authority to transfer the action to state court.  Id.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motion is granted and the complaint is dismissed without prejudice.  The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:          September 13, 2007